343 F.3d 1159
 PUBLIC CITIZEN INC.; Center for Auto Safety; The Trauma Foundation; Andrew McGuire; Jane Kelly; Ralf Hotchkiss, Petitioners,
Automotive Occupant Restraints Council, Intervenors,
v.
Norman Y. MINETA, Respondent,
Alliance of Automobile Manufacturers, Inc., Intervenors.
 No. 02-70303.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 9, 2003 — Seattle, Washington.
 Filed September 15, 2003.
 
 COPYRIGHT MATERIAL OMITTED Michael Tankersley, Washington, D.C., argued the case for the petitioners.
 H. Thomas Byron III, DOJ, Washington, D.C., argued the case for the respondent.
 Erika Z. Jones, Washington, D.C., argued the case for the respondent-intervenors.
 On Petition for Review of an Order of the Department of Transportation, NHTSA. TRAN No. 49 CFR.
 Before: Thomas M. REAVLEY,* A. Wallace Tashima, and PAEZ Richard A. Paez, Circuit Judges.
 OPINION
 PAEZ, Circuit Judge.
 
 
 1
 This case presents the novel question of when an order promulgating a regulation of the National Highway Traffic Safety Administration ("NHTSA") has been "issued" for the purposes of calculating the 59-day period in which a petition for review must be filed. We hold that an order has not been "issued" until it has been filed with the Office of the Federal Register and thus made available for public inspection. Although we conclude that the Petition for Review in this case was timely under the 59-day rule, for the reasons recounted below, we lack jurisdiction and thus transfer the Petition to the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") under 28 U.S.C. § 1631.
 
 BACKGROUND
 
 2
 Public Citizen, the Center for Auto Safety, the Trauma Foundation, Andrew McGuire, Jane Kelly, and Ralf Hotchkiss (collectively "Petitioners") seek review of NHTSA's December 2001 order ("December 2001 Final Rule" or "Final Rule")[1] adopting amendments to Federal Motor Vehicle Safety Standard No. 208, 49 C.F.R. § 571.208 (2002) ("Standard No. 208"). In order to provide some context for the issues presented by Petitioners, we briefly explain the history and purpose of Standard No. 208. See Federal Motor Vehicle Safety Standards; Occupant Crash Protection; Appendix B-Evolution of the Air Bag Provisions in Standard No. 208, 65 Fed.Reg. 30,680, 30,740-41 (May 12, 2000) ("May 2000 Interim Rule" or "Interim Rule").
 
 
 3
 In 1966, Congress enacted the National Traffic and Motor Vehicle Safety Act of 1966 (the "Act"), Pub.L. No. 89-563, 80 Stat. 718, in order to "reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. The Act directed the Secretary of Transportation (the "Secretary") or his delegate to issue appropriate Federal Motor Vehicle Safety Standards, Pub.L. No. 89-563, § 103, 80 Stat. 719, and the Secretary has delegated this authority to the Administrator of NHTSA, see 49 C.F.R. § 1.50(a) (1997); see also Freightliner Corp. v. Myrick, 514 U.S. 280, 284, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995).
 
 
 4
 Standard No. 208 was initially promulgated in 1967 and required manufacturers to install manual lap belts in all new motor vehicles. See Initial Federal Motor Vehicle Safety Standards, 49 C.F.R. § 371.21 (1970). In 1991, Congress included a provision in the Intermodal Surface Transportation Efficiency Act (the "ISTEA") that directed NHTSA to amend Standard No. 208 to require that all passenger cars and light trucks provide automatic occupant protection by means of air bags. 49 U.S.C. § 30127(b). However, the ISTEA did not specify an air bag system design that manufacturers were required to use, and left the design and testing procedures to NHTSA's discretion. NHTSA developed detailed testing criteria, including specific testing procedures, particular test dummies to be used in testing, injury criteria, and performance limits. Until March 1997, manufacturers had to meet the injury criteria limits in Standard No. 208 for air-bag equipped vehicles in barrier crashes at speeds of up to 30 miles per hour ("mph"), using both a belted 50th percentile adult male dummy[2] and an unbelted one. 65 Fed.Reg. at 30,741.
 
 
 5
 In an effort to address the growing incidence of air-bag induced injuries,[3] NHTSA adopted, at the prompting of Congress, a series of rules governing occupant safety, including the Transportation Equity Act for the 21st Century ("TEA-21"),[4] which prompted the December 2001 Final Rule at issue here. Congress enacted TEA-21 after several congressional hearings[5] during which many witnesses and members of Congress expressed concern that, under the then-existing Standard No. 208, manufacturers were required to design air bags to protect adult passengers who chose not to wear seat belts, which necessarily, albeit unintentionally, increased the risk of air bag injuries to infants and children. H.R.Rep. No. 105-477, at 7. TEA 21 directed the Secretary to "issue a notice of proposed rulemaking to improve occupant protection for occupants of different sizes, belted and unbelted, under Standard No. 208, while minimizing the risk to infants, children, and other occupants from injuries and deaths caused by air bags, by means that include advanced air bags." § 7103(a)(1). TEA-21 thus gave the Secretary broad discretion to accomplish the distinct goals of "improv[ing] occupant protection for occupants of different sizes, belted and unbelted" while "minimizing the risk to infants, children, and other occupants from injuries and deaths caused by air bags." Id.[6]
 
 
 6
 Pursuant to TEA-21, NHTSA issued a Notice of Proposed Rulemaking to modify Standard No. 208 on September 18, 1998, which proposed a broad range of possible changes, including a 30 mph barrier crash test and a 25 mph "offset deformable barrier crash" test for 5th percentile adult females. Federal Motor Vehicle Safety Standards; Occupant Crash Protection, 63 Fed.Reg. 49,958, 49,968 (Sept. 18, 1998). After receiving comments from interested parties, see Department of Transportation Docket No. 1998-4405-158, NHTSA issued a supplemental Notice of Proposed Rulemaking in November 1999, proposing two alternative unbelted test procedures and contemplating a 25 mph speed for the unbelted barrier crash test for the initial phase-in period, and increasing the test speed to 30 mph at a later date. Federal Motor Vehicle Safety Standards; Occupant Crash Protection, 64 Fed.Reg. 60,556, 60,556-59, 60,569-83 (Nov. 5, 1999).
 
 
 7
 On May 12, 2000, NHTSA published its May 2000 Interim Rule, adding a "wide variety of new requirements, test procedures, and injury criteria, using an assortment of new dummies." 65 Fed.Reg. at 30,680. Ultimately deciding to resolve the "uncertainty associated with the challenge of simultaneously achieving the twin goals of TEA-21 ... in favor of minimizing risk," NHTSA decided to reduce the maximum speed in the rigid barrier crash test for unbelted 50th percentile adult males and 5th percentile female dummies to 25 mph for the first and second phase-in periods,[7] issuing that part of the rule "as an interim final rule" and planning a "multi-year effort to obtain additional data." 65 Fed.Reg. at 30,680, 30,719. It promised to "issue a final decision regarding the maximum test speed after giving notice and seeking public comment" and kept the docket for this rule change open for that purpose. 65 Fed.Reg. at 30,680.
 
 
 8
 Petitioners Public Citizen and the Center for Auto Safety filed a joint petition for reconsideration in June 2000,[8] asserting that the May 2000 Interim Rule "not only does not improve occupant protection for all occupants but even decreases protection for some occupants." June 26, 2000 Petition for Reconsideration, available at http://dms.dot.gov/ search/searchFormSimple.cfm ("Docket Number" 7013). Among other requests, Public Citizen and the Center for Auto Safety suggested that NHTSA impose the 30 mph requirement on passenger cars and reserve the 25 mph test for light trucks, vans, and SUVs. Id.; 66 Fed.Reg. at 65,379-81.[9]
 
 
 9
 On December 18, 2001, NHTSA published the December 2001 Final Rule, 49 C.F.R. § 571.208 (2002), granting portions of the petitions for reconsideration and revising the regulations in certain respects, but denying those portions of the petitions that urged NHTSA to change the maximum unbelted barrier crash test speed back to 30 mph. 66 Fed.Reg. at 65,376. Thus, the 25 mph maximum speed requirement for unbelted dummies in barrier crash tests remained unchanged in the first and second phase-in periods. It is this December 2001 Final Rule that Petitioners challenge in their petition for review.[10]
 
 JURISDICTION
 I.
 
 10
 As a preliminary matter, we must determine whether the petition was timely filed in this circuit within the 59-day period for seeking judicial review.
 
 Under 49 U.S.C. § 30161:
 
 11
 A person adversely affected by an order prescribing a motor vehicle safety standard under this chapter may apply for review of the order by filing a petition for review in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 59 days after the order is issued."
 
 
 12
 Because the 59-day period for seeking judicial review does not commence until an order is issued, the heart of our inquiry centers on what is meant by "issued."
 
 
 13
 The Federal Register indicates that the December 2001 Final Rule was "issued" on December 6, 2001, but was "filed" on December 17, 2001, 66 Fed.Reg. at 65,421, and published in the Federal Register on December 18, 2001, id. at 65,376. The petition was filed February 12, 2002. Therefore, the petition was timely filed if the date the Final Order was "issued" is the date of publication in the Federal Register or the date the Final Order was filed, but not if it is the date on which the Federal Register indicates the Final Rule was "issued."
 
 
 14
 Petitioners contend that the 59-day deadline began to run on December 18, 2001, the date that the Final Rule was published in the Federal Register and released in the Department of Transportation's rulemaking docket (Docket No. 2001-11110), as they had no notice of the Final Rule before that date and thus argue that their right to seek review could not have been affected by a rule of which they were unaware. The Secretary, relying on NHTSA's 1995 Rulemaking Procedures, 49 C.F.R. § 553.39, argues that the period for judicial review "does not begin to run on the publication date; rather it runs from the date that the regulation ... is `issued'... by the agency." Rulemaking Procedures, 60 Fed.Reg. 63,648, 63,649 (Dec. 12, 1995). On the basis of this regulation, the Secretary contends that the petition for review, filed on February 12, 2002, was filed 9 days after the 59-day period had lapsed.
 
 
 15
 It is well-settled that NHTSA's interpretation of its own regulations is entitled to substantial deference. See Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 150-51, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991); Lyng v. Payne, 476 U.S. 926, 939, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986). Indeed, the Secretary's argument is not wholly meritless. In amending its procedural regulations regarding judicial review of various chapters of Title 49 of the United States Code, NHTSA responded to concerns of several commenters[11] and clarified that "[t]he agency deems a decision in response to a petition for reconsideration ... to be final for judicial review purposes on the date that it is issued." 60 Fed.Reg. at 63,649. Although NHTSA acknowledged that "[a] petitioner is presumed to have notice of the agency's action when it is published in the Federal Register," citing 44 U.S.C. § 1507, Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), it stated that "the language of each of these statutes [49 U.S.C. §§ 30161, 32503(a) & 32909(b)] indicates that the time period for judicial review does not begin to run on the publication date; rather it runs from the date that the regulation, standard, or decision on reconsideration is `issued' or `prescribed' by the agency." Id. Thus, NHTSA clearly does not equate "issued" with "published."
 
 
 16
 However, NHTSA's rulemaking regulations, 49 C.F.R. § 553, subpart B, do not describe or define what date is to be listed as the "issued" date for regulations. Indeed, in this case, it is not clear what, if any, event took place on December 6, 2001. Although NHTSA has indicated that it does not equate "issued" with publication in the Federal Register, it has not defined the term or expressed any indication of what the term "issued" means. Significantly, its regulations do not require the agency to inform interested parties or give notice to the public on the date that a regulation is "issued."[12] Although 49 C.F.R. § 553.37 states that "[w]henever the Administrator determines that a petition [for reconsideration] should be granted or denied, he prepares a notice of the grant or denial of a petition for reconsideration, for issuance to the petitioner, and issues it to the petitioner," the regulations do not specify the timing or manner in which the notice must be issued. Thus, without any indication of what event takes place when a regulation is "issued," and without any explanation of the timing or manner in which notification is to be achieved, NHTSA can adversely affect the amount of time that a person has to file a petition for judicial review.
 
 
 17
 Although we afford NHTSA considerable discretion to specify when an order has been "issued," see Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 676, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Chem-Haulers, Inc. v. United States, 536 F.2d 610, 615 (5th Cir.1976) ("I.C.C.'s interpretation of terms relating to its own procedures are similarly entitled to some deference, especially where there is no compelling precedent or reason tending to support an opposite view."), NHTSA should not "have the power to manipulate the jurisdiction of the federal courts." Fla. Manufactured Hous. Ass'n, Inc. v. Cisneros, 53 F.3d 1565, 1574 (11th Cir. 1995); see also Pub. Citizen v. Nuclear Regulatory Comm'n, 901 F.2d 147, 153 (D.C.Cir.1990) ("Although an agency has considerable latitude in determining the event that triggers commencement of the judicial review period, it must do so reasonably.") (internal citations omitted).
 
 
 18
 Indeed, while we ordinarily defer to an agency's interpretation of its own regulations,[13] we need not accord any deference to an unreasonable construction that does not conform with the wording and purpose of the regulation. See Lal v. INS, 255 F.3d 998, 1004 (9th Cir.2001); D.H. Blattner & Sons, Inc. v. Sec'y of Labor, Mine Safety & Health Admin., 152 F.3d 1102, 1105 (9th Cir.1998); Mem'l Rehab. Hosp. v. Sec'y of Health & Human Servs., 65 F.3d 134, 137 (9th Cir.1995); see also Morris v. Commodity Futures Trading Comm'n, 980 F.2d 1289, 1293 (9th Cir.1992) ("Where the question to be decided involved matters of particular expertise of the agency, the deferential standard should be applied. But judicial deference is not necessarily warranted where courts have experience in the area and are fully competent to decide the issue."). Here, NHTSA has stated that one purpose of establishing procedures for public participation in its rulemaking processes is "to inform the public of the procedures following in response to [rulemaking] petitions." 49 C.F.R. § 552.2.[14] Because NHTSA's interpretation of "issued" fails to provide for or require any form of notice before the time period for seeking judicial review commences, its interpretation is clearly at odds with its goal of "inform[ing] the public of the procedures" that must be followed to obtain judicial review. Accordingly, we conclude that NHTSA's interpretation is unreasonable and is not entitled to any deference.
 
 
 19
 In the absence of a reasonable definition of "issued" by NHTSA, we remain cognizant of its stated purpose of "informing the public" and turn to analogous precedent for guidance. Although we have not defined "issued," we have derived reasonable definitions of similar terms by considering the "ordinary meaning of the word[s]." N.W. Envtl. Def. Ctr. v. Brennen, 958 F.2d 930, 934 (9th Cir.1992) (noting that, as defined by both Black's Law Dictionary and Webster's Ninth New Collegiate Dictionary, "the ordinary meaning of the word `promulgate' is `to publish' or `to announce officially'"); see also Fla. Manufactured Hous. Ass'n, 53 F.3d at 1574 (noting the Random House Unabridged Dictionary's definition of "issue" as "`to put out'; `deliver for use, sale'; `put into circulation'; and `to mint, print, or publish for sale of distribution,'" the court held that "the verb `issue' clearly refers to an act of public announcement and not to the act of arriving at a private decision within the agency"). According to Black's Law Dictionary, the verb "issue" is defined as "[t]o send out or distribute officially." Black's Law Dictionary 836 (7th ed.1999). Webster's defines "issue" as "[t]o distribute or circulate officially." Webster's II New Riverside University Dictionary 647 (1994). The "ordinary meaning" of "issue" therefore contemplates some form of public notice.
 
 
 20
 Further, in resolving questions of timeliness in similar contexts, we have held that the public must be notified of regulations affecting the right of interested parties to seek judicial review before those rights may be implicated. See Newell v. SEC, 812 F.2d 1259, 1260-61 (9th Cir.1987) (holding that an SEC regulation had given certain meaning to the term "entry date," such that all public orders were available for public inspection on the "entry date," and noting that this regulation had specifically addressed the aggrieved party's need to have both adequate notice and sufficient time to prepare its petition); Brennen, 958 F.2d at 934 (explaining that the public generally does not know of agency actions and therefore "cannot be expected to begin preparing an attack on them" prior to such knowledge).
 
 
 21
 Therefore, in keeping with the ordinary meaning of "issue," our case law, and NHTSA's own stated purpose in promulgating procedures for public participation in its rule-making processes, we hold that a regulation issued under 49 U.S.C. § 30161 is "issued" on the date that the regulation is made available for public inspection. Although NHTSA represented in its brief to this court that it had filed the December 2001 Final Rule on December 7, 2001, it failed to document or explain this filing, and yet the Federal Register indicates a filing date of December 17, 2001. See 49 Fed.Reg. at 65,421 ("[FR Doc. 01-30754 Filed 12-17-01; 8:45 am]"). Because the published filing date is presumed correct,[15] it appears that the first time the December 2001 Final Rule was made available for public inspection was December 17, 2001 at 8:45 a.m. Accordingly, the petition for review was timely filed on February 12, 2002, two days before the expiration of the 59-day deadline under 49 U.S.C. § 30161.[16]
 
 II.
 
 22
 The Secretary urges that, even if the petition for review was timely filed, this court nonetheless lacks jurisdiction to consider Petitioners' claims because the petitioners who may properly file a petition for review in this court filed well after the 59-day deadline under 49 U.S.C. § 30161. The Secretary notes that only Public Citizen and the Center for Auto Safety petitioned for reconsideration of the May 2000 Interim Rule and that they have their principal places of business in Washington, D.C. The four other petitioners — the Trauma Foundation, Andrew McGuire, Jane Kelly, and Ralf Hotchkiss — did not file a petition for reconsideration of the May 2000 Interim Rule, and filed their petition for review, along with Public Citizen and the Center for Auto Safety, with this court on February 12, 2002. These petitioners (the "California petitioners") reside in or have their principal place of business in California. Because NHTSA's regulations provide that the "filing of a timely petition for reconsideration of any rule issued under this part postpones the expiration of the statutory period in which to seek judicial review of that rule only as to the petitioner, and not as to other interested persons," 49 C.F.R. § 553.39, the Secretary contends that the California petitioners untimely filed their petition for review in this court. By failing to file a petition for reconsideration, the California petitioners had only until July 5, 2000 to file a petition for review, 59 days after the May 2000 Interim Rule was "issued." Thus, because only Public Citizen and the Center for Auto Safety (the "Washington, D.C. petitioners") filed a petition for reconsideration, only the Washington D.C. petitioners could have timely filed their petition within 59 days of the December 2001 Final Rule. The Secretary therefore requests that we dismiss the petition or transfer it to the D.C. Circuit pursuant to 28 U.S.C. § 1631.
 
 
 23
 Petitioners do not dispute that the California petitioners did not file a petition for reconsideration, but they maintain that NHTSA lacks the authority to issue regulations limiting the class of persons who may seek judicial review of a NHTSA order and that NHTSA mistakenly interpreted the case law that guided its understanding in drafting section 553.39. They also contend that by reopening the proceeding on Standard No. 208 after issuing its May 2000 Interim Rule, NHTSA reopened all aspects of the May 2000 Interim Rule for judicial review. Thus, Petitioners argue that the California petitioners' filing was timely and urge this court to decide the merits of their petition.
 
 
 24
 Prior to January 11, 1996, 49 C.F.R. § 553.39 provided that the filing of a timely petition for reconsideration postponed "the expiration of the 60-day period in which to seek judicial review of that rule, as to every person adversely affected by the rule." 60 Fed.Reg. at 63,649. In 1995, NHTSA amended this section to provide that:
 
 
 25
 The filing of a timely petition for reconsideration of any rule issued under this part postpones the expiration of the statutory period in which to seek judicial review of that rule only as to the petitioner, and not as to other interested persons. For the petitioner, the period for seeking judicial review will commence at the time the agency takes final action upon the petition for reconsideration.
 
 
 26
 49 C.F.R. § 553.39.[17] In so doing, NHTSA expressly clarified that the filing of a petition for reconsideration tolled the limitations period for judicial review "only as to the petitioners, and not as to other interested persons." 60 Fed.Reg. at 63,649 (emphasis added).
 
 
 27
 Significantly, three commenters opposed the proposed amendment, arguing that "one party's petition for reconsideration should stay the statute of limitations for judicial review of all interested parties ... [and] that the proposed amendment was not compelled by the case law described in the [Notice of Proposed Rulemaking]," but NHTSA rejected their arguments. Instead, NHTSA noted that several courts had held that a party who did not file a petition for reconsideration of an agency's proposed regulation could seek judicial review of an agency order while another party's petition for reconsideration of that order was pending. See Petroleum Communications, Inc. v. FCC, 22 F.3d 1164, 1171 n. 6 (D.C.Cir.1994); ICG Concerned Workers Ass'n v. United States, 888 F.2d 1455, 1457 (D.C.Cir.1989); Winter v. I.C.C., 851 F.2d 1056, 1062 (8th Cir.1988). NHTSA therefore provided that such action was final as to all non-petitioning parties and that "there is no basis on which the agency (or the courts) could legally extend the limitations period applicable to those parties beyond the 59 days provided by [49 U.S.C. § 30161]." 60 Fed.Reg. at 63,649. Thus, NHTSA concluded that a party who did not petition for reconsideration had to seek judicial review within the 59-day statutory limitations period, commencing on the date the original rule was issued. Id.
 
 
 28
 NHTSA further noted that "[n]one of these statutory provisions requires parties to seek administrative reconsideration before filing a petition for review." Id. Thus, contrary to Petitioners' argument, NHTSA's regulations do not limit judicial review to parties who filed a formal petition for reconsideration; to be sure, 49 C.F.R. § 553.39 requires that any person adversely affected by a NHTSA order prescribing a regulation, file a petition for judicial review within the 59-day statutory period unless that person files a petition for reconsideration. The California petitioners did not do so, and Petitioners cannot escape this requirement by attempting to challenge NHTSA's 1995 amendments to this regulation. These amendments were issued in 1995, and any party adversely affected by the amendments was required to file a petition for review within 59 days of the issue date. See 49 U.S.C. § 30161. The expiration date for such a challenge has long past.[18]
 
 
 29
 Further, although the December 2001 Final Rule granted several requests for reconsideration and thereby reopened matters addressed in the May 2000 Interim Rule, Petitioners do not challenge any of the issues on which NHTSA granted reconsideration. Indeed, Petitioners only challenge is to the unaltered portion of the original May 2000 Interim Rule requiring unbelted testing of vehicles at a maximum speed of 25 mph rather than 30 mph. Because the December 2001 Final Rule did not alter the 25 mph unbelted testing speed established in the May 2000 Interim Rule,[19] the California petitioners[20] are now precluded from seeking judicial review of this provision.[21]
 
 
 30
 Moreover, we agree with NHTSA's rationale in amending 49 C.F.R. § 553.39, that "finality with respect to agency action is a party-based concept," Bellsouth Corp. v. FCC, 17 F.3d 1487, 1489 (D.C.Cir.1994) (internal quotation marks omitted), and does not preclude "any person adversely affected," 49 U.S.C. § 30161, from seeking judicial review. Although a petition for reconsideration renders an agency order non-final as to the party seeking reconsideration, it does not affect the right to seek judicial review by those persons who did not try to obtain reconsideration, and such persons may not extend the 59-day time period for seeking judicial review by piggy-backing on to a petition for reconsideration filed by another party. See 60 Fed. Reg. at 63,649-51. We reject the California petitioners' attempt to do so here.
 
 
 31
 In sum, because the California petitioners failed to file a timely petition for reconsideration, their petition for review is untimely; consequently, we lack jurisdiction to consider the merits of their petition for review.
 
 III.
 
 32
 Section 30161 states that "a person adversely affected by an order prescribing a motor vehicle safety standard under this chapter may apply for review of the order by filing a petition for review in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." 49 U.S.C. § 30161. Because the California petitioners did not file a petition for reconsideration within 59 days of the May 2000 Interim Rule, we lack jurisdiction to address the merits of their petition for judicial review. However, in light of our conclusion that the Washington, D.C. petitioners timely filed their petition for review, we conclude that it is "in the interest of justice" to transfer the petition to the D.C. Circuit under 28 U.S.C. § 1631.[22]
 
 IV.
 
 33
 The petition for review is TRANSFERRED to the D.C. Circuit.
 
 
 
 Notes:
 
 
 *
 The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Federal Motor Vehicle Safety Standards, Occupant Crash Protection, 66 Fed.Reg. 65,376 (Dec. 18, 2001) (codified at 49 C.F.R. pt. 571)
 
 
 [2]
 A "50th percentile" adult male dummy represents an average-size man. A "5th percentile" adult female dummy represents a small womanSee May 2000 Interim Rule, Appendix A-Glossary-Test Dummies, 65 Fed.Reg. at 30,740.
 
 
 [3]
 In order to protect the unbelted 50th percentile male dummy in an accident, an air bag must be quite large with a powerful inflator so that the air bag inflates with sufficient speed and force to cushion the occupant; otherwise, the dummy will experience excessive trauma during its "second collision" with the vehicle interior or windshield. This requirement, however, has had severely negative consequences for smaller passengers, as an air bag that inflates with sufficient force to restrain an unbelted 50th percentile male dummy in a 30 mph accident is so powerful that it has proved fatal to small-statured women and children in certain circumstances. Federal Motor Vehicle Safety Standard, Occupant Crash Protection, 62 Fed.Reg. 12,960, 12,960-61 (Mar. 19, 1999)
 
 
 [4]
 Pub.L. No. 105-178, § 7103(a)(4), 112 Stat. 466 (June 9, 1998)
 
 
 [5]
 Airbags, Car Seats, and Child Safety: Hearing before the House Subcomm. on Telecommunications, Trade, and Consumer Protection, Comm. on Commerce, 105th Cong. (1997); Reauthorization of the National Highway Traffic Safety Administration: Hearing before the House Subcomm. on Telecommunications, Trade, and Consumer Protection, Comm. on Commerce, 105th Cong. (1997); Markup of H.R. 2691, National Highway Traffic Safety Administration Reauthorization Act of 1997: Hearing before the House Subcomm. on Telecommunications, Trade, and Consumer Protection, Comm. on Commerce, 105th Cong. (1997).
 
 
 [6]
 It directed the Secretary to issue "a final rule with any provision the Secretary deems appropriate, consistent with paragraph (1) and the requirements of section 30111, title 49, United States Code." § 7103(a)(2)
 
 
 [7]
 The first phase-in period was scheduled from September 1, 2003 to August 31, 2006; the second phase-in period is scheduled to begin on September 1, 2007 and end on September 1, 2010. During the first phase, the maximum speed in the rigid barrier crash test for allbelted dummies is 30 mph, and 35 mph for belted 50th percentile male dummies during the second phase.
 
 
 [8]
 The Consumer Federation of America and Parents for Safer Air Bags were also parties to the joint petition for reconsideration
 
 
 [9]
 Seven other petitions for reconsideration were also timely filedSee June 26, 2000 Petition for Reconsideration, available at http:// dms.dot.gov/search/searchFormSimple.cfm ("Docket Number" 7013).
 
 
 [10]
 Specifically, Petitioners claim that, with the new amendments to Standard 208, NHTSA has permitted manufacturers to lower the level of protection provided by "advanced air bags" by reducing the maximum unbelted crash test speed from 30 to 25 mph. They allege that these amendments to Standard No. 208 are unreasonable, because they violate the Congressional mandate to "improve occupant protection," and are the result of an arbitrary and capricious decision-making process. As we explain, however, we lack jurisdiction and therefore do not address the merits of their petition
 
 
 [11]
 Several commenters responded to NHTSA's Notice of Proposed Rule-making, 55 Fed.Reg. 45,825, that it issued "to correct the erroneous positions of [49 C.F.R.] section 553.39." 60 Fed.Reg. at 63,649
 
 
 [12]
 NHTSA's rulemaking procedures indicate that final rules must be submitted to the Administrator for consideration. The Administrator represents the Department of Transportation and is the principal advisor to the Secretary in all matters relating to chapter 301 of Title 49 of the United States CodeSee 49 C.F.R. § 503(a)(1). "If the Administrator adopts the rule, it is published in the Federal Register, unless all persons subject to it are named and are personally served with a copy of it." 49 C.F.R. § 553.29. Thus, NHTSA has two methods for notifying interested parties of a final rule — through publication or by personal service. Here, neither NHTSA nor Petitioners allege that NHTSA personally served any of the petitioners with notice that there had been a ruling on the petition for reconsideration or that Petitioners learned of the ruling before the December 18, 2001 publication date.
 
 
 [13]
 By interpretation, we mean NHTSA's interpretation of 49 C.F.R. § 553.39, as published in the Federal RegisterSee 60 Fed.Reg. 63,648-51.
 
 
 [14]
 49 C.F.R. § 552.1 provides:
 This part establishes procedures for the submission and disposition of petitions filed by interested persons pursuant to 49 U.S.C. Chapters 301, 305, 321, 323, 325, 327, 329 and 331 to initiate rulemaking or to make a decision that a motor vehicle or item of replacement equipment does not comply with an applicable Federal motor vehicle safety standard or contains a defect which relates to motor vehicle safety.
 
 
 [49]
 C.F.R. § 552.2 indicates that
 The purpose of this part is to enable the National Highway Traffic Safety Administration to identify and respond on a timely basis to petitions for rulemaking or defect or noncompliance decisions, and to inform the public of the procedures following in response to such petitions.
 
 
 [15]
 44 U.S.C. § 1503 states that "[t]he Archivist of the United States shall cause to be noted on the original and duplicate originals or certified copies of each document the day and hour of filing ... Upon filing, at least one copy shall be immediately available for public inspection in the Office." Section 1504 further provides that "[t]here shall be printed with each document a copy of the notation, required to be made by section 1503 of this title, of the day and hour when, upon filing with the Office, the document was made available for public inspection." Here, that date/time is December 17, 2001 at 8:45 a.mSee 66 Fed.Reg. at 65,421. "The publication in the Federal Register of a document creates a rebuttable presumption ... (2) that it was filed with the Office of Federal Register and made available for public inspection at the day and hour stated in the printed notation." 44 U.S.C. § 1507. By failing to provide any documentation of its alleged December 7, 2001 filing of the December 2001 Final Rule, NHTSA has failed to rebut the presumption that it was filed on December 17, 2001 at 8:45 a.m.
 
 
 [16]
 We also note that it is of no significance that Petitioners still had 49 days in which to file their petition for review after learning of the Final Rule on December 18, 2001. All adversely affected parties have 59 days in which to prepare a petition for review and this time period does not commence until the day on which the regulation is made available for public inspection once it is filed with the Office of the Federal Register
 
 
 [17]
 This provision took effect January 11, 1996See 61 Fed.Reg. 23,432, 23,433.
 
 
 [18]
 Consequently, Petitioners' reliance onUnited States v. Mead Corp., 533 U.S. 218, 227-31, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), and Phillips Petroleum Co. v. FERC, 792 F.2d 1165, 1169 (D.C.Cir.1986) is misplaced, as both cases involved direct, timely challenges to agency decisions.
 
 
 [19]
 In its 1995 order amending 49 C.F.R. § 553.39, NHTSA provided that
 persons who did not seek timely reconsideration or timely judicial review of the original agency action may only challenge the actions taken by the agency in response to the petition for reconsideration. All other issues were final as to the non-petitioning parties at the time of the original action. Therefore, any court challenge by non-petitioning parties to agency actions not affected by the response to the petition for reconsideration must be made within 59 days of the original agency action.
 
 
 [60]
 Fed.Reg. at 63,651 (emphasis added)
 
 
 [20]
 In light of our conclusion that the petition was timely filed within 59 days of the December 2001 Final Rule, the Washington D.C. petitioners arenot precluded from seeking review of this provision.
 
 
 [21]
 Relying on the Supreme Court's decision inICC v. Brotherhood of Locomotive Engineers, 482 U.S. 270, 278, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987), Petitioners claim that NHTSA's decision to reopen the record on its May 2000 Interim Rule triggers a new period for seeking review, "even if[the December 2001 Final Rule] merely affirms the rights and obligations set forth in the [May 2000 Interim Rule]." NHTSA has expressly stated, however, that a person who files a petition for reconsideration "may obtain judicial review of all aspects of the original order, not merely the portion of that order on which he or she sought reconsideration," 60 Fed.Reg. at 63,651, and therefore its regulations do not contradict the Supreme Court's holding in Locomotive Engineers. Indeed, because this issue of finality was not before the Court in Locomotive Engineers, its holding does not conflict with our conclusion here.
 
 
 [22]
 28 U.S.C. § 1631 provides:
 Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.
 Because the Washington, D.C. petitioners' petition for review would have been timely filed in the D.C. Circuit on February 12, 2002, the petition meets the requirements for transfer under § 1631. See Gioda v. Saipan Stevedoring Co., 855 F.2d 625, 629 (9th Cir.1988) (setting out three conditions for application of 28 U.S.C. § 1631:(1) transferee court must have been able to exercise jurisdiction on the date the notice of filing was misfiled; (2) transferor court must lack jurisdiction, and (3) transfer must serve interests of justice); Tr. for Alaska v. United States Dep't of Interior, 919 F.2d 119, 123 (9th Cir.1990) (determining that although we lacked jurisdiction to review an agency's decision, transfer was warranted where a court had never interpreted the agency's jurisdictional provisions, thereby making confusion possible); Miller v. Hambrick, 905 F.2d 259, 262 (9th Cir.1990) (allowing transfer were action could have been brought in another district because there was jurisdiction at the time of his filing). See also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (holding that where Federal Circuit transferred case to Seventh Circuit under 28 U.S.C. § 1631, the Federal Circuit's understanding of the jurisdictional issue was the law of the case).