Zarumin COLEMAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Petitioner.

No. 49A02–1101–CR–12.

Court of Appeals of Indiana.

Aug. 26, 2011.

Mary Spears, Gilroy Kammen Hertzel & Moudy, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Zarumin Coleman appeals his sixty-year sentence for one count of Class A felony conspiracy to commit robbery and one count of Class B felony possession of a firearm by a serious violent felon ("SVF"). We affirm in part, reverse in part, and remand.

### Issues

The issues before us are:

I. whether Coleman's sentence exceeded the maximum permissible for a single episode of criminal conduct; and

II. whether his sentence is inappropriate.

### Facts[1]

On January 14, 2008, Tommy Warren told Coleman and Ronald Davis that there was a substantial amount of money and marijuana in a house on North Hovey Street in Indianapolis and that it would be an "easy lick," or robbery, to take those items because only women lived there. Tr. p. 76. Coleman agreed to be the driver for this robbery, using a vehicle he was "renting" in exchange for drugs, and he and Davis also recruited Donte Hobson and Jasper Frazier to assist them. Warren did not participate any further in the events of that day.

Coleman drove to his girlfriend's residence and directed her to retrieve a Glock handgun, which she gave to Hobson; Davis eventually obtained the Glock. Frazier obtained a Tech 9 pistol that was in the vehicle Coleman was driving. Coleman then drove to the Hovey Street address. Hobson, who had ridden to the scene with Coleman and the others, apparently walked away from the house after giving advice to Davis and Frazier on how to break into the house. When Davis and Frazier went inside the house by climbing through a window, they found Gina Hunt and Andrea Yarrell hiding behind a bed with their two children, one-year-old Jordan Hunt and four-month-old Charlii Yarrell. Davis began yelling at the women, demanding to know where the marijuana was located. When the women said that it was no longer there, Davis began shooting both women and their children with the Glock, eventually killing all four of them. Frazier and Davis fled from the scene on foot, and Coleman picked them up at a pre-arranged meeting point. Frazier claimed that he later was confined and threatened by Coleman in his apartment.

In a joint information, the State charged Coleman, Davis, Frazier, Hobson, and Warren with a number of offenses. Davis was charged with four counts of murder

---

1. The record before us is not entirely consistent with respect to precisely what happened in this case, especially given some of Coleman's statements before the trial court. We have derived these facts from testimony presented at Coleman's sentencing by the detective who investigated the case, along with the probable cause affidavit.

and four counts of felony murder, along with Class A felony conspiracy to commit robbery and other offenses. None of the other men were charged with murder or felony murder. Coleman was charged with Class A felony conspiracy to commit robbery, Class B felony possession of a firearm by a SVF,[2] and Class D felony criminal confinement.

On November 3, 2010, Coleman pled guilty to Class A felony conspiracy to commit robbery and Class B felony possession of a firearm by a SVF, with the confinement charge to be dismissed. Sentencing was left to the trial court's discretion. In the plea agreement, the State indicated that it had considered filing murder charges against Coleman, but it did not do so because of his guilty plea. Coleman also agreed to cooperate in any proceedings against his co-defendants. The trial court sentenced Coleman to forty-five years for the conspiracy to commit robbery conviction and fifteen years for the SVF conviction, to be served consecutively for a total of sixty years. Although the official records are not before this court, the parties seem to agree that Coleman's co-defendants received the following sentences: for Davis, 245 years; for Hobson, thirty-five years; for Frazier, seventy years; and for Warren, ten years. Coleman now appeals his sentence.

## Analysis

### I. Single Episode of Criminal Conduct

First, we address Coleman's contention that his sixty-year aggregate sentence exceeded the maximum permissible for engaging in a single episode of criminal conduct. With respect to consecutive sentencing, Indiana Code Section 35–50–1–2(c) provides in part:

> The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

If the statutory limitation on consecutive sentencing applies in this case, then Coleman's aggregate sentence cannot exceed fifty-five years, which is the advisory sentence for murder, the next class of felony above a Class A felony. *See* Ind.Code § 35–50–2–3(a).

Class A felony robbery is a delineated "crime of violence," pursuant to Indiana Code Section 35–50–1–2(a)(12); conspiracy to commit that offense or any of the delineated "crimes of violence" is not expressly listed as a "crime of violence." Coleman contends that Class A felony conspiracy to commit robbery cannot be considered a "crime of violence" because it is not expressly listed as such in the statute. The State responds that we should nonetheless consider conspiracy to commit an offense the same as committing that offense itself, apparently conceding that Coleman's acts of possessing a firearm as a SVF and conspiring to commit robbery constituted a single episode of criminal conduct.[3]

---

2. Coleman has a prior conviction for Class C felony attempted robbery, among other convictions.

3. Possession of a firearm by a SVF is not a "crime of violence." Nonetheless, if Class A felony conspiracy to commit robbery is a "crime of violence," the sentences for those two offenses could be served consecutively without limitation. *See Ellis v. State*, 736 N.E.2d 731, 737–38 (Ind.2000).

No Indiana case has directly addressed whether conspiracy to commit a "crime of violence" constitutes commission of a "crime of violence" for purposes of Indiana Code Section 35–50–1–2(c). In at least two previous cases, this court proceeded on the assumption that conspiracy to commit a "crime of violence" was not a "crime of violence," and then analyzed whether the single episode of criminal conduct rule applied to limit a defendant's sentence. *See Fields v. State*, 825 N.E.2d 841, 847 (Ind.Ct.App.2005), *trans. denied; Green v. State*, 850 N.E.2d 977, 984 (Ind.Ct.App. 2006), *summarily aff'd in relevant part*, 856 N.E.2d 703, 704–05 (Ind.2006). Neither *Fields* nor *Green*, however, analyzed or provided any citation for whether conspiracy to commit an offense constitutes a "crime of violence." The precise issue was neither raised nor argued in those cases. Here, the parties squarely raise the issue.

Our starting point in addressing this question is *Ellis v. State*, 736 N.E.2d 731 (Ind.2000). There, our supreme court held that although murder is a delineated "crime of violence," attempted murder was not. *Ellis*, 736 N.E.2d at 737. The court declined to extend the clear statutory delineation of what constitutes a "crime of violence" to attempts to commit such crimes. *Id.* It held that the statute was clear, that the legislature listed the precise names and citations of what were to be considered "crimes of violence," and that the legislature could have written the statute to include other offenses if it had intended to do so. *Id.* (quoting *Ballard v. State*, 715 N.E.2d 1276, 1280 (Ind.Ct.App. 1999)). Thus, the court held that Indiana Code Section 35–50–1–2(c) applied to limit the defendant's sentence for a single episode of criminal conduct resulting in two

convictions for attempted murder to fifty-five years. *Id.*

After *Ellis*, the legislature amended Section 35–50–1–2(a)'s list of delineated "crimes of violence" to specifically include attempted murder. *See* Ind. P.L. 228–2001, § 6. It did not, however, make an attempt to commit any of the other delineated "crimes of violence" a "crime of violence." Given this, in light of *Ellis*'s general holding that an attempt to commit a "crime of violence" is not the same as committing a "crime of violence," it is reasonable to infer that the legislature considered the crime of attempted murder to warrant special treatment that attempts to commit other crimes did not. *Ellis*'s clear holding, we posit, is that an attempt to commit any of the other delineated "crimes of violence" besides murder, including Class A felony robbery, remains excluded from the statutory definition of a "crime of violence."

■ Given *Ellis*, the question we must answer is whether a conviction for conspiring to commit a crime is akin to attempting to commit a crime, at least for purposes of the consecutive sentencing statute. The State argues that we ought to consider a conviction for conspiring to commit a crime as more like aiding or abetting another person's commission of a crime. Indiana Code Section 35–41–2–4 provides that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. . . ." Under current Indiana law, it is axiomatic that there is no distinction between the criminal liability of a principal and accomplice. *Sanquenetti v. State*, 727 N.E.2d 437, 439 (Ind.2000). There is no separate crime of being an accessory to a crime,[4] and a person who

---

**4.** Although this general language frequently appears in cases, to be clear, there is an

Indiana statute that specifically creates a separate offense, Indiana Code Section 35–44–3–

would have been considered an accessory under the common law instead vicariously commits the offense itself. *Id.* at 441. One may be charged as a principal in committing a crime, but be convicted upon evidence that he or she aided or abetted the actual perpetrator. *Taylor v. State,* 840 N.E.2d 324, 338 (Ind.2006).

 The State cites cases and statutes from other jurisdictions for the proposition that like aiding and abetting, conspiring to commit a crime is merely an alternative basis upon which to establish a defendant's liability for a crime, and is not a separate crime in and of itself. *See, e.g., State v. Maghee,* 573 N.W.2d 1, 7 (Iowa 1997). We believe the State's position is inconsistent with how Indiana treats the crime of conspiracy to commit an offense; namely, that it is a separate offense from the underlying offense. We first note that the conspiracy statute, Indiana Code Section 35–41–5–2, which follows directly after the attempt statute, contains elements that must be proven in a conspiracy case, and not in a case for the underlying offense: an agreement with another person with intent to commit a felony, and the commission of an overt act in furtherance of the agreement. Moreover, where there is evidence of only one agreement, there can only be one conspiracy conviction, even if the agreement is to commit multiple crimes. *Turnley v. State,* 725 N.E.2d 87, 89–90 (Ind.2000). The reason for this rule is that the agreement itself constitutes the criminal act. *Id.* at 90. We also note that,

although the State suggests otherwise in its brief, there is no absolute prohibition under Indiana law against convicting a defendant of both conspiracy to commit an offense and the offense itself. *Johnson v. State,* 749 N.E.2d 1103, 1108 (Ind.2001). Double jeopardy rules preclude a conviction for conspiracy and the underlying offense only when the same evidence is used to prove both the overt act committed in furtherance of the conspiracy and the commission of the underlying crime. *Id.* Otherwise, a defendant may be convicted of both offenses. *Id.* In direct contrast to criminal liability for conspiracy, one may assist in multiple crimes, but can only be convicted of assisting in each offense once, because his or her liability is precisely the same as the principal's.

We also note that a conspiracy conviction does not require proof that the defendant or a cohort actually committed or even attempted to commit the underlying crime. *Conn v. State,* 948 N.E.2d 849, 853 (Ind.Ct.App.2011). In this sense, conspiracy to commit a crime is very similar to an attempt to commit a crime—it is an "inchoate" or incomplete crime.[5] If an offense is in fact completed, i.e. if a conspiracy is in fact carried out to its conclusion, then the State would have the option of charging and convicting a defendant of either or both conspiracy and the underlying offense, subject to the possible double jeopardy limitation we have mentioned. If the defendant ended up not being the

---

2, which criminalizes harboring, concealing, or otherwise assisting a criminal, with intent that the apprehension or punishment of the criminal be hindered. Our supreme court has indicated that the general aiding and abetting statute, Section 35–41–2–4, applies to what were known as accessories before the fact under common law, while the assisting a criminal statute applies to what were known as accessories after the fact. *See McKnight v. State,* 658 N.E.2d 559, 560–61 (Ind.1995).

5. Indiana Code Section 35–41–5–3(a) prohibits a defendant from being convicted of both conspiracy and attempt with respect to the same underlying crime. Subsection (b) of that statute prohibits a defendant from being convicted of both attempting to commit a crime and the crime itself, but is silent as to conspiracy.

actual perpetrator of the offense, but an accomplice, the State still could seek to impose full criminal liability upon the defendant for the offense under the aiding and abetting statute. In such a case, where delineated "crimes of violence" are concerned, there would be no limitation upon the consecutive sentences a defendant could receive.

■ Here, whether Coleman could have been convicted as an accomplice to Davis's actual commission of Class A felony robbery, and whether the limitation upon consecutive sentencing would have applied if he had been, is not before us. It does not appear that Davis actually completed a robbery, as there is no evidence before us that he absconded with any property from the victims. That would make it an attempted robbery—a crime that would fall directly within *Ellis*'s holding.

■ Indiana law currently treats conspiracy to commit an offense as separate and distinct from commission of the offense itself. We conclude that conspiracies are akin to attempts for purposes of Indiana Code Section 35–50–1–2, and the rule announced in *Ellis* applies. The legislature has been on clear notice for at least ten years that Indiana courts will strictly construe the meaning of "crimes of violence" under Section 35–50–1–2, and that courts will not infer that the legislature intended any unlisted offenses to qualify as such crimes. Aside from adding attempted murder to the list of enumerated offenses, it has taken no action to make conspiracies generally, or attempts to commit any crime other than murder, "crimes of violence."

The legislature reasonably may have concluded that because conspiracies do not necessarily result in actual harm to a victim, and often require less proof of detrimental conduct in order to convict a defendant than as to the completed crime, it would not include conspiracies to commit a "crime of violence" within the definition of "crime of violence." Of course, the particular conspiracy in this case had brutally violent, tragic results. Nonetheless, we are not authorized to create fact-specific exceptions to the plain language of Indiana Code Section 35–50–1–2. Thus, we must direct that Coleman's aggregate sentence cannot exceed fifty-five years, the advisory sentence for the next highest class of offense, murder. This may be accomplished by reversing Coleman's forty-five-year conspiracy sentence and directing that it be reduced to forty years, to run consecutively to the fifteen-year SVF sentence for a total of fifty-five years.

## II. Inappropriateness

In his argument regarding consecutive sentences, Coleman requested that if we agreed with his argument, that we remand for the trial court to resentence him to a term not exceeding fifty-five years. We believe remand would be pointless, as we are certain the trial court would in fact resentence Coleman to the maximum possible term of fifty-five years. Additionally, Coleman argues in the next section of his brief that his sentence should be revised to a term of forty-five year under Indiana Appellate Rule 7(B). Having already determined that Coleman's sentence must be reduced to fifty-five years for statutory reasons, we will address whether a term of fifty-five years is inappropriate in light of Coleman's character and the nature of the offenses.

■ Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind.Ct.App.2007). We also understand and recognize the unique perspective a trial court brings to its sentencing deci-

sions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

█ The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind.2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224.

█ We first address the nature of the offenses here. On that point, there can be no denying that the end result of Coleman's crimes was horrific. Two young women and two children under the age of two were brutally murdered in their home as the result of a plot to steal drugs and money. Coleman makes much of the fact that it was Davis who ultimately shot the victims, and he claims to have lacked intent or advance knowledge that Davis would shoot them, or even that he knew children would be present at the house. As *Cardwell* states, however, the culpability of a defendant is only one factor to consider in assessing whether a sentence is inappropriate. The severity of the crime and the damage done to others are separate considerations, and not necessarily dependent upon the defendant's culpability.

We find *McCann v. State,* 749 N.E.2d 1116 (Ind.2001), to be instructive. There, our supreme court held that the fact of an attempted rape victim's pregnancy was a proper aggravating circumstance, despite the absence of any evidence that the defendant knew the victim was pregnant. *McCann,* 749 N.E.2d at 1120. The court held, "aggravating circumstances turn on the consequences to the victim as well as the culpability of the defendant." *Id.* The court also noted *Black*'s definition of "aggravation," which is " '[a]ny circumstance attending the commission of a crime ... which increases its guilt or enormity or adds to its injurious consequences....' " *Id.* (quoting Black's Law Dictionary 60 (5th ed.1979)).

Although *McCann* dealt specifically with what a trial court may properly find to be an aggravating circumstance, we see no reason why it would not apply with equal force when an appellate court analyzes the nature of an offense under Rule 7(B). The enormity of the results of Coleman's offenses cannot be downplayed simply because he might not have intended for the victims to die. Moreover, in order to obtain a conviction for Class A felony conspiracy to commit robbery, the State only had to prove that the crime resulted in serious bodily injury to one victim. *See* I.C. § 35–42–5–1. Here, four persons died, well beyond what an "average" Class A felony robbery might entail. Indeed, it is difficult to imagine a worse result.

Turning now to Coleman's character, we do acknowledge that he pled guilty, agreed to cooperate with the State against his co-defendants, and expressed his remorse to the families of the victims, all of which weigh in Coleman's favor. However, Coleman's criminal history reflects very poorly upon his character. His first contact with the legal system came in 1991 at the age of five, when he was suspected of burglary, criminal trespass, and criminal recklessness. Although he was not formally adjudicated a delinquent for these offenses, he

did receive a warning from the juvenile court for the trespass and recklessness charges. There are numerous other juvenile events in his record that were not reduced to adjudications. He does have juvenile delinquency adjudications in Indiana for theft, carrying a handgun without a license, and criminal recklessness, and in Michigan for attempted breaking and entering of a residence, attempted breaking and entering of a motor vehicle, and attempted larceny. His adult criminal history began in 2002 at the age of sixteen and includes felony convictions for possession of cocaine or a narcotic drug, intimidation, attempted robbery, and escape, and misdemeanor convictions for carrying a handgun without a license, driving with a suspended license, and possession of marijuana. His record reflects several probation violations, both as a juvenile and as an adult. He was on probation, in fact, when he committed the present offenses. Moreover, even when Coleman is in either a jail or prison, he is apparently incapable of obeying rules. He has accumulated approximately thirty negative conduct incident reports over the past eight years during various stints in jail or prison. In sum, by the age of twenty-one, when these offenses were committed, Coleman had been regularly flouting the law, whether in jail or prison or outside of them, for many years.

 As a general matter, Coleman also contends that extended incarceration will be a hardship upon his dependents. Coleman has four children by three different women; there is no evidence that he is ordered to pay or is in fact paying child support to any of them. We have already reduced Coleman's sentence to fifty-five years, and he is requesting that it be lowered to forty-five. We fail to perceive how this difference of ten years would be substantially less of a hardship to his dependents. This alone is sufficient to refuse to reduce Coleman's sentence based on a claim of hardship to dependents. *See Firestone v. State*, 774 N.E.2d 109, 115 (Ind.Ct.App.2002) (holding that hardship to dependents warrants little mitigating weight where difference between presumptive (now advisory) and enhanced sentence would not impose much, if any, additional hardship on a child).

 Coleman also argues that his relative youth at the time of the offenses warrants a reduced sentence. A defendant's youthful age can, in some cases, constitute a significant mitigating circumstance warranting a reduced sentence. *Smith v. State*, 872 N.E.2d 169, 178 (Ind. Ct.App.2007), *trans. denied.* That is not automatically the case, however. *Id.* "There are both relatively old offenders who seem clueless and relatively young ones who appear hardened and purposeful." *Ellis*, 736 N.E.2d at 736. Here, it does not appear that Coleman's relative youth caused him to be led astray by a more commanding older person. Coleman's extensive criminal history and apparent ready willingness to help carry out the robbery makes him appear more "hardened and purposeful" than "clueless." Moreover, twenty-one is not especially young; this court previously has described a defendant who was one day shy of his eighteenth birthday as "not so 'youthful.'" *Bryant v. State*, 802 N.E.2d 486, 502 (Ind. Ct.App.2004), *trans. denied.* Coleman's age does not warrant a reduced sentence.

Also, despite the egregious nature of the offenses and Coleman's highly questionable character, he contends that we ought to find his sentence inappropriate after comparing it to the sentences received by some of his co-defendants. In *Cardwell,* our supreme court did reduce a defendant's sentence as inappropriate, in part because the disparity between the defendant's sentence and his co-defendant's sen-

tence for the same episode of criminal conduct was "stark." *Cardwell*, 895 N.E.2d at 1226. In particular, the court found the defendant's culpability to be the same or even less than his co-defendant's, but the defendant had ended up with a sentence of thirty-four years while the co-defendant received a sentence of eighteen months. The court revised the defendant's sentence to seventeen years.

■ Coleman first contends his sentence is excessive in comparison to the thirty-five year sentence Hobson received for precisely the same two convictions. We believe the record reflects that Coleman was the much more active participant in the robbery conspiracy. While Hobson merely rode along to the house, and apparently walked away from the house after arriving there, Coleman agreed to be the driver for the crime using a vehicle he was "renting." Hobson did apparently provide some advice to Davis and Frazier on how to break into the house, but it was Coleman who provided the Glock—the murder weapon—to Davis. Although Coleman seems to imply in his brief that it was either his girlfriend or Hobson who actually provided the Glock, the record before us indicates that Coleman told his girlfriend where she could find the gun in her house; the reasonable inference from such evidence is that the gun was Coleman's and that he had hid it in his girlfriend's house. It is possible that Hobson was the person who ended up handing the Glock to Davis, but it was Coleman who actually "provided" it. Additionally, in comparing Coleman's sentence to Hobson's, we know nothing about Hobson's criminal history, except that he evidently qualified as a SVF; we do not know if Hobson's criminal and related history is as extensive as Coleman's. As such, and given Coleman's greater level of involvement in the robbery conspiracy, we cannot say a difference of twenty years between Coleman's and Hobson's sentences is so "stark" that it requires a reduction in Coleman's sentence.

Coleman also contends that his sentence should be even lower in comparison to the seventy-year sentence received by Frazier. Frazier actually entered the Hovey Street house and was present when Davis shot the victims, although he did not shoot anyone himself.[6] For that reason, Frazier's involvement in these crimes arguably is slightly greater than Coleman's, although not significantly more, warranting a slightly longer sentence. And again, we know nothing of Frazier's character generally, including his criminal history, by which we could make a fair comparison of the sentence he received with Coleman's. We decline to hold that Coleman's sentence must be more than fifteen years lower than Frazier's sentence.

In sum, the nature of the offenses in this case is inescapably heinous, even if Coleman did not intend for four persons, including two very young children, to be shot to death. We are heartened by Coleman's steps to take responsibility for his actions, including his guilty plea, but cannot overlook his complete disregard for the law reflected by the significant criminal history he had accumulated by the age of twenty-one and his repeated inability to behave properly while incarcerated. Coleman has failed to convince us that an aggregate sentence of fifty-five years is inappropriate in light of his character and the nature of the offenses, either standing alone or in comparison to his co-defendants.

### Conclusion

We are compelled to conclude a sentence of sixty years on convictions for Class A

---

**6.** Frazier claimed in his statement to police that when Davis began shooting, he tried to stop Davis by grabbing his arm, but that Davis then threatened to kill him.

felony conspiracy to commit robbery and Class B felony possession of a firearm by a SVF violate the single episode of criminal conduct rule for non-"crimes of violence." We reverse and remand for the trial court to resentence Coleman to a total term of fifty-five years, in accordance with this opinion. As for that fifty-five year term, it is not inappropriate in light of the nature of the offenses and Coleman's character, and we refuse to reduce it further to a term of forty-five years.

Affirmed in part, reversed in part, and remanded.

ROBB, C.J., and BRADFORD, J., concur.