**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMMERLY A. KLEE**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD WILKINS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A05-1306-CR-309 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-1205-FB-36455

**FEBRUARY 24, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Richard Wilkins ("Wilkins") appeals his convictions for Class B felony conspiracy to commit dealing in a narcotic drug[1] and Class B felony dealing in a narcotic drug.[2]

We affirm in part, reverse in part, and remand with instructions.

ISSUES

1. Whether Wilkins' convictions for conspiracy to commit dealing and dealing in a narcotic drug violate the Indiana Constitution's prohibition against double jeopardy.

2. Whether the State produced sufficient evidence to prove beyond a reasonable doubt that Wilkins committed conspiracy to commit dealing in a narcotic drug and dealing in a narcotic drug.

FACTS

In April of 2012, Detective Scott Wolfe ("Detective Wolfe") of the Indianapolis Metropolitan Police Department ("IMPD") received information from a confidential informant that a man named Harry Ferguson ("Ferguson") was selling drugs from his apartment. Based on this information, Detective Wolfe and another police officer with the IMPD, Sergeant Scott Brimer ("Sergeant Brimer"), arranged for the confidential informant to make a controlled buy from Ferguson.

On April 25, 2012, Sergeant Brimer parked in the parking lot on the south side of Ferguson's apartment building so that he could videotape the transaction. Meanwhile, the confidential informant, who was with Detective Wolfe, called Ferguson. Ferguson told the informant that he did not have any drugs available, and the informant responded

---

[1] Ind. Code §§ 35-48-4-1; 35-41-5-2.

[2] I.C. § 35-48-4-1.

that he would try again the next day and that Ferguson should "try to have five of them" for him. (Tr. 96). After this call, Sergeant Brimer videotaped a silver Cadillac driving into the parking lot of Ferguson's apartment building. Wilkins got out of the vehicle and entered the building. Later, after Wilkins exited the building, the confidential informant again called Ferguson, and Ferguson told him that he had obtained heroin for him.

Detective Wolfe searched the confidential informant and his vehicle for drugs, personal money, and weapons, but did not find any. He also outfitted the informant with an audio transmitter and gave him "buy money" in the amount of fifty (50) dollars. (Tr. 33). When the informant returned from Ferguson's apartment, he had five (5) pieces of foil filled with a powder that later tested positive for heroin. On the audio recording of the buy, the officers heard Ferguson state, "that's my dude" in reference to Wilkins. (Tr. 88-89). Subsequently, Detective Wolfe and Sergeant Brimer conducted additional controlled buys from Ferguson on May 11, 2012 and May 22, 2012. Both times, the officers searched the informant before and after the controlled buy, and both times Ferguson gave the confidential informant five packets of heroin in exchange for fifty (50) dollars.

On May 23, 2012, the day after the third controlled buy, Detective Wolfe obtained a search warrant and searched Ferguson's apartment. There, he found a "digital scale with residue" on it, syringes, and a foil packet filled with heroin, among other items. (Tr. 93). During the search, Ferguson admitted to Detective Wolfe that he sold heroin.

That same day, Officer Luke Schmitt ("Officer Schmitt") of the IMPD conducted a traffic stop of Wilkins for failing to use his turn signal and for failing to yield to

3

oncoming traffic. During the stop, Officer Schmitt's canine partner performed an open air sniff of the vehicle. When the canine gave a positive indication for the presence of controlled substances, Officer Schmitt searched the vehicle and found a marijuana "roach" and a blue Mentos container with white residue. (App. 28). Wilkins admitted that he kept heroin in the Mentos container and that he had snorted it two hours earlier. When the officers asked if Wilkins knew Ferguson, Wilkins stated that they were friends and admitted that he sold Ferguson around thirty (30) to forty (40) packets of heroin a day. The officers arrested Wilkins and, in a search pursuant to the arrest, found $223 in his front pocket. They identified $20 as money from one of the controlled buys.

On May 30, 2012, the State filed charges against Ferguson and Wilkins jointly. In total, it alleged eleven (11) counts, but only the following were against Wilkins: Count I, Class B felony conspiracy to commit dealing in a narcotic drug; Count II, Class B felony dealing in a narcotic drug; Count III, Class D felony possession of a narcotic drug; Count VIII, Class D felony possession of a narcotic drug; and Count IX, Class A misdemeanor possession of marijuana.

On April 29, 2013, the trial court held a bench trial for both Ferguson and Wilkins and found Wilkins guilty of Counts I, II, and III. However, on May 14, 2013, the trial court held a sentencing hearing and only entered a judgment of conviction against Wilkins for Counts I and II because it held that Count III, possession of a narcotic drug, could be included in the other Counts. In total, the trial court sentenced Wilkins to ten years, with three years executed at the Department of Correction, three years on community corrections, and the balance of his sentence suspended to probation. Both

Counts were ordered to be served concurrently. Wilkins now appeals. We will provide additional facts as necessary.

DECISION

Wilkins raises two issues on appeal. First, he argues that the State did not provide sufficient evidence to prove beyond a reasonable doubt that he committed Class B felony conspiracy to commit dealing and Class B felony dealing in a narcotic drug. Second, he argues that his two convictions violate the prohibition against double jeopardy. Because we find the second issue dispositive as to Wilkins' Class B felony dealing in a narcotic drug conviction, we will address Wilkins' double jeopardy argument first instead of addressing his arguments in the order that he raises them.

1. Double Jeopardy

Wilkins claims that his two convictions violate Indiana's prohibition on double jeopardy because the same evidence was used to prove both offenses. Article I, Section 14 of the Indiana Constitution provides that "no person shall be put in jeopardy twice for the same offense." Two or more offenses "are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999).

Because Wilkins claims that the same evidence was used to prove both offenses, we will focus on the second half of this standard, the actual evidence test. In *Richardson*,

5

the Supreme Court held that under such an inquiry, we should examine the actual evidence presented at trial to determine "whether each challenged offense was established by separate and distinct facts." *Id.* at 53. The defendant must demonstrate "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* There is no prohibition under Indiana law against convicting a defendant of both conspiracy to commit an offense and the offense itself. *Coleman v. State*, 952 N.E.2d 377, 382 (Ind. Ct. App. 2011). However, double jeopardy rules preclude a conviction for conspiracy and the underlying offense when the same evidence is used to prove both the overt act committed in furtherance of the conspiracy and the commission of the underlying crime. *Id.*

Under Indiana Code § 35-48-4-1, a person who "knowingly or intentionally . . . delivers . . . cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II . . . commits dealing in cocaine or a narcotic drug, a Class B felony." A person conspires to commit dealing when that person, "with intent to commit the felony, [] agrees with another person to commit the felony." I.C. § 35-41-5-2(a). To prove a conspiracy charge, the State must "allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement." I.C. § 35-41-5-2(b).

The State concedes that Wilkins' convictions violated Indiana's double jeopardy prohibition, and we agree. With respect to the conspiracy charge, the State alleged in its information that:

> Harry Ferguson and Richard Wilkins, on or about between April 24 and April 26, 2012, did agree with each other to commit the felony of Dealing in a Narcotic Drug, which is to knowingly deliver to a confidential informant a narcotic drug, that is: heroin, classified in Schedule I of the Indiana Uniform Controlled Substances Act, and Harry Ferguson performed the following overt act in furtherance of said agreement: delivered heroin to a confidential informant.

(App. 30). Then, with respect to its Class B felony dealing in a narcotic drug charge, the State alleged:

> Harry Ferguson and Richard Wilkins, on or about between April 24 and April 26, 2012, did knowingly deliver to a confidential informant a narcotic drug, that is: heroin, classified in Schedule I of the Indiana Uniform Controlled Substances Act.

(App. 30). As listed in these charges, it is clear that the State used the evidence of Wilkins' delivery of heroin to the confidential informant between April 24 and 26 to prove both the overt act committed in furtherance of the conspiracy and the commission of the underlying crime. Accordingly, we conclude that Wilkins' convictions violated double jeopardy, and we remand with instructions for the trial court to vacate his conviction for Class B felony conspiracy to commit dealing in a narcotic drug.

2. Sufficiency of the Evidence

Next, Wilkins argues that the State did not produce sufficient evidence to prove beyond a reasonable doubt that he committed either Class B felony dealing in a narcotic drug or Class B felony conspiracy to commit dealing in a narcotic drug. His primary contention is that there was no direct evidence of his involvement in the April 24-26 drug buy or of an agreement with Ferguson to deal heroin. He does acknowledge the surveillance video that recorded him in the vicinity of Ferguson's apartment, but he

7

contends that the videotaped evidence is not sufficient to support an inference that he sold Ferguson heroin. Also, he argues that his confession that he had sold Ferguson heroin in the past did not prove that he sold it to him on April 24-April 26, as alleged.

The standard of review for a sufficiency of the evidence claim is that this Court should only reverse a conviction when reasonable persons would not be able to form inferences as to each material element of the offense. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied.* We do not reweigh evidence or judge the credibility of witnesses. *Id.* at 213. In addition, we only consider the evidence most favorable to the verdict and the reasonable inferences stemming from that evidence. *Id.* Here, we will only consider the sufficiency of the evidence for Wilkins' dealing in a narcotic drug conviction as we have already ordered his conspiracy conviction vacated due to double jeopardy.

As stated above, a person who "knowingly or intentionally . . . delivers . . . cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II . . . commits dealing in cocaine or a narcotic drug, a Class B felony." I.C. § 35-48-4-1. First, we note that although Wilkins did not sell to the confidential informant directly, the State charged that "Harry Ferguson *and* Richard Wilkins, on or about between April 24 and April 26, 2012, did knowingly deliver to a confidential informant a narcotic drug . . . ." (App. 30) (emphasis added). Indiana recognizes accomplice liability, which is not a separate crime, but is a separate basis of liability for the already charged crime. *Hampton v. State*, 719 N.E.2d 803, 807 (Ind. 1999). Under this theory, one who aids, abets, or assists in a crime is equally as culpable as the one who commits the actual crime. *Id. See also* I.C. § 35-41-

8

2-4 ("[a] person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense."). Accordingly, the State had to prove that Wilkins aided Ferguson in dealing heroin to the confidential informant.

We do not find either of Wilkins' arguments persuasive because there was additional evidence in the record to prove that he aided Ferguson in dealing heroin besides the videotape and his confession that he had sold to Ferguson on other occasions. Specifically, Detective Wolfe testified that before Wilkins arrived and was recorded on videotape, Ferguson did not have any heroin available to sell, and that after Wilkins left, Ferguson did. Further, Ferguson stated to the confidential informant "that's my dude" in reference to Wilkins, and when Officer Schmitt stopped Wilkins, he discovered that Wilkins had $20 of the buy money in his pocket. (Tr. 88-89). In light of these factors, we conclude that the State did produce sufficient evidence that Wilkins committed Class B felony dealing in a narcotic drug.

Affirmed in part, reversed in part, and remanded with instructions.

MATHIAS, J., and BRADFORD, J., concur.