FILED

Jul 13 2023, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Daylon L. Welliver
Deputy Attorney General
Indianapolis, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

Heidi Marie Littlefield,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 13, 2023

Court of Appeals Case No.
22A-CR-2895

Appeal from the Hamilton
Superior Court

The Honorable Michael A. Casati,
Judge

Trial Court Cause No.
29D01-2103-MR-1789

**Opinion by Chief Judge Altice**
Judge Kenworthy and Senior Judge Robb concur.

**Altice, Chief Judge.**

**Case Summary**

[1] Heidi Littlefield appeals her convictions for murder, Level 1 felony conspiracy to commit murder, and Level 2 felony conspiracy to commit murder, claiming that the evidence was insufficient to support her conviction for murder, and that the dual convictions for murder and Level 1 felony conspiracy to commit murder constitute double jeopardy. Littlefield further contends that the 115-year aggregate sentence is inappropriate when considering the nature of the offenses and her character.

[2] We affirm.

**Facts & Procedural History**[1]

[3] Littlefield and Francis Kelley are the biological parents of B.K., born in early 2019. The relationship between Littlefield and Kelley soured after B.K.'s birth. As a result, Littlefield did not want Kelley to have a relationship with B.K.; nor did she want her adult children to interact with Kelley.

[4] In March 2020, Kelley filed a petition to establish custody, parenting time, and child support. At some point, Littlefield approached two of her adult daughters to assist in purchasing drugs to poison Kelley. After they refused, Littlefield asked another daughter, Logan Runyon, to help her obtain fentanyl and poison Kelley. Littlefield promised to give her some of the life insurance proceeds that B.K. would receive if they succeeded in killing Kelley.

---

[1] We heard oral argument in this matter on June 22, 2023, at the Jewish Community Center in Indianapolis. We thank all at the Center for their hospitality, and we commend counsel for their able presentations.

[5]     Runyon purchased the fentanyl, and in October 2020, Littlefield brought Kelley soup that she and Runyon had laced with the drug. Although Kelley consumed the soup and became ill, he did not die. Later that same month, Littlefield spoke with Robert Walker—Runyon's boyfriend—about hiring a hitman to kill Kelley. Walker acknowledged that he "knew someone," and Littlefield gave him $2500 as a down payment for contacting the prospective hitman. *Transcript Vol. IV* at 119-20. Runyon and Walker, however, spent the money on hotels and drugs.

[6]     On January 14, 2021, Runyon and Littlefield purchased more fentanyl. That same day, Runyon entered Kelley's residence after Littlefield lured him away from the house to go shopping for B.K. Once inside, Runyon laced Kelley's refrigerated oatmeal with the fentanyl. The next day, Kelley texted Littlefield and asked whether she had put something in his oatmeal because it tasted "funny," and he felt "light-headed." *Id.* at 145. Shortly thereafter, Runyon and Littlefield, along with B.K., drove to Kelley's house. Runyon saw Kelley through a window lying on the kitchen floor. Runyon entered the residence through a window and opened the front door for Littlefield. Kelley was breathing abnormally and gasping for air. Littlefield grabbed one of Kelley's neckties, tied it around his neck, lifted him "up, probably two to three feet" several times, and slammed his head to the floor each time. *Id.* at 148-49. After they left the residence, Littlefield tossed the necktie in a restaurant trash can.

[7]     On January 18, Kelley's former girlfriend—and mother of their minor child— went to Kelley's residence and saw him lying on a couch, deceased. She saw

no signs of forced entry, and when emergency personnel arrived, they examined Kelley and determined that he was nonviable due to "prolonged signs of death," including lividity and rigor mortis. *Transcript Vol. III* at 35. There was evidence of blunt force trauma to Kelley's eye and head, and the cause of death was determined to be "asphyxia due to strangulation/neck compression" with "acute fentanyl intoxication" as a contributing cause. *Id.* at 168. The evidence showed that the fentanyl would have made Kelley "groggy" and unable to defend himself. *Id.* at 167, 170. Fentanyl can result in a "slow death," and take up to twelve or more hours before a person dies after ingesting the drug. *Id.* at 174. The fluid found in Kelley's lungs indicated that he died "a slow death," and the level of fentanyl in his system could have been considered as the cause of death, had that been the only finding in the autopsy. *Id.* at 174-75.

[8]     Following a police investigation, Littlefield was charged with murder (Count 1), Level 1 felony conspiracy to commit murder (Count 2), and Level 2 felony conspiracy to commit murder (Count 3). The conspiracy counts alleged the following:

> **Count 2**: between on or about January 1, 2021 and on or about January 15, 2021, Littlefield agreed with Runyon to commit the crime of murder (which is to knowingly or intentionally kill another human being, to-wit: Francis A. Kelley) with the intent to commit that crime, and Littlefield or Runyon performed at least one overt act in furtherance of the agreement, to-wit:
>
>> a. acquiring fentanyl
>> b. transporting Runyon to Carmel
>> c. transporting fentanyl to Carmel

d. accompanying Kelley away from his home on January 14, 2021
e. adding fentanyl to Kelley's food
f. entering Kelley's home on January 15, 2021
g. battering and/or strangling Kelley.

**Count 3**: between on or about October 1, 2020, and on or about October 31, 2020, Littlefield agreed with Robert James Walker to commit the crime of murder (which is to knowingly or intentionally kill another human being), to-wit: Kelley with the intent to commit that crime, and Littlefield performed at least one overt act in furtherance of the agreement, to-wit:

a. paid money to Robert James Walker.

*Appellant's Appendix Vol. II* at 19.

[9] Following a jury trial, Littlefield was found guilty as charged, and the trial court entered judgments of conviction on all counts. At the sentencing hearing on October 7, 2022, the trial court found the following aggravating circumstances: a) Kelley's vulnerability when Littlefield strangled him; b) the planning and premeditation of the offenses exceeded what was necessary to establish a conspiracy; c) Littlefield's commission of the offenses deprived B.K. of her parents; d) her plans to kill Kelley resulted in prison sentences for Runyon and Walker; and e) Littlefield's threats against Runyon to cooperate in the plan. The trial court identified Littlefield's lack of criminal history as a mitigating factor, and after determining that the aggravators substantially outweighed the sole mitigating circumstance, the trial court sentenced Littlefield to sixty years on Count 1, thirty-five years on Count 2, and twenty years on Count 3.

Littlefield was ordered to serve the sentences consecutively, thus resulting in an aggregate 115-year executed sentence.

[10] Littlefield now appeals.

**Discussion and Decision**

*1. Sufficiency of the Evidence*

[11] Littlefield argues that her murder conviction must be reversed because the State failed to establish that she killed Kelley. Littlefield maintains that while the State presented sufficient evidence to show that "she *attempted* to kill Kelley," the "State's own evidence did not establish that she killed him." *Appellant's Brief* at 13 (emphasis added).

[12] When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor reassess the credibility of the witnesses. *Hall v. State,* 177 N.E.3d 1183, 1191 (Ind. 2021). Rather, we consider the evidence most favorable to the verdict and any reasonable inferences that can be drawn therefrom. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). Moreover, when faced with conflicting evidence, we consider only that which is favorable to the judgment. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). If there exists substantial evidence of probative value to support the jury's conclusion, the conviction will be affirmed. *Willis,* 27 N.E.3d at 1066.

[13] In accordance with Ind. Code § 35-42-1-1, the offense of murder is committed when a defendant "knowingly or intentionally kills another human being." In

support of her sufficiency of the evidence claim, Littlefield notes that the primary cause of Kelley's death was determined to be asphyxia due to strangulation rather than acute fentanyl intoxication. Although Runyon testified at trial that Littlefield strangled Kelley with a necktie and banged his head on the floor numerous times, Littlefield argues that Kelley was alive when she and Runyon left the residence. According to Littlefield, the evidence established that Kelley could not have died on the floor "because livor mortis would have settled on the front part of [Kelley's] body." *Appellant's Brief* at 14. Littlefield also notes that the State's evidence showed that Matthew Duncan— the father of one of Littlefield's other children—had spoken with Runyon and Walker about killing Kelley and that Duncan's cell phone was tracked in the vicinity of Kelley's home on the afternoon of January 16. In light of this evidence, Littlefield claims that there was a "strong possibility that . . . Duncan visited the home . . . and strangled Kelley [to death] . . . ." *Id.* at 15. In short, Littlefield maintains that because "the State never presented any evidence to show that Littlefield in any way aided, induced, or caused Duncan to kill Kelley," the murder conviction must be reversed. *Id.*

[14] Notwithstanding Littlefield's contentions, the evidence most favorable to the judgment established that Littlefield and Runyon purchased fentanyl to poison Kelley's food with the intention of killing him. Littlefield developed the plan for Runyon to enter Kelley's house while he was not there and poison his oatmeal. Littlefield set the plan in motion by luring Kelley from his house, and Runyon entered while he was away.

[15] The evidence further showed that when Kelley texted Littlefield asking if she put something in his oatmeal, Littlefield threatened Runyon and compelled her to continue to assist in the plan to kill Kelley. The two proceeded to Kelley's house and once inside, Littlefield strangled Kelley with a necktie and slammed his head repeatedly on the ground, causing severe injury and blunt force trauma. Runyon then walked outside and waited in the car for approximately ten minutes until Littlefield exited the residence. The two then drove to a restaurant where Littlefield threw the necktie in the trash. The evidence established that Littlefield was the last known person to have seen Kelley alive.

[16] Runyon's testimony was corroborated by the autopsy, along with the forensic pathologist's testimony who concluded that Kelley was strangled to death with fentanyl intoxication as a contributing cause. Moreover, Runyon's testimony that Littlefield placed the necktie around Kelley's neck, lifted him off the ground several times and banged his head on the floor, was corroborated by the evidence of injury to Kelley's neck muscles, voice box, Adam's apple, and tongue.

[17] In sum, Littlefield is asking that we reweigh the evidence, which we decline to do. We conclude that the evidence was sufficient to support Littlefield's murder conviction.

### 2. *Double Jeopardy*

[18] Littlefield argues that dual convictions for murder and conspiracy to commit murder as alleged in Count 2 cannot stand because of the double jeopardy

prohibition under Article 1, Section 14 of the Indiana Constitution. Littlefield maintains that the murder conviction must be set aside when applying the double jeopardy test announced in *Wadle v. State,* 151 N.E.3d 227, 253 (Ind. 2020).

[19]     Questions of substantive double jeopardy are resolved pursuant to the framework set forth in *Wadle* and *Powell v. State,* 151 N.E.3d 256 (Ind. 2020). The "*Wadle* test" applies "when a single criminal act or transaction violates multiple statutes with common elements and harms one or more victims," whereas the *Powell* test applies "when a single criminal act or transaction violates a single statute but harms multiple victims" or "results in multiple injuries." *Wadle*, 151 N.E.3d at 247; *Powell,* 151 N.E.3d at 263. Under either test, "the dispositive question is one of statutory intent." *Wadle*, 151 N.E.3d at 247. Double jeopardy claims are reviewed de novo. *Id.* at 237.

[20]     The offenses in this case involve Littlefield's convictions for a single criminal transaction that implicates *both* the murder and conspiracy statutes. *See Garth v. State,* 182 N.E.3d 905, 920 (Ind. Ct. App. 2022), *trans. denied*. Thus, Littlefield's claim triggers application of the *Wadle* test. *See id.* Under the *Wadle* analysis, we first examine whether the statutes permit multiple punishments, either by express statement or by unmistakable implication. *Wadle,* 151 N.E.3d at 248. If so, there is no violation of substantive double jeopardy and "the court's inquiry comes to an end." *Id.* If the statutes are unclear, we apply our included-offense statutes. *Id.* If either offense is included in the other, either inherently or as charged, we then consider whether the defendant's actions are "so compressed

in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id.* at 249. If the facts show only a single crime, judgment may not be entered on the included offense. *Id.* at 256.

[21] To obtain a murder conviction, the State must establish that the person knowingly or intentionally killed another person, or the defendant aided, induced, or caused someone else to kill the person. Ind. Code §§ 35-41-2-4, 35-42-1-1. A person conspires to commit a felony when, with intent to commit the felony, the person "agrees with another person to commit the felony." I.C. § 35-41-5-2(a). To obtain a conviction for conspiracy, the State must "allege and prove that either the person or the person with whom he or she agreed performed an overt act in furtherance of the agreement." I.C. § 35-41-5-2(b).

[22] Littlefield asserts that neither the murder statute nor the conspiracy statute includes language that expressly states or implies that multiple punishments are permitted. She also notes that the General Assembly did not amend the "multiple convictions" statute[2] "to *expressly* permit punishment for both conspiracy to commit murder *and* murder." *Appellant's Reply Brief* at 5. As a result, Littlefield asserts that all the double jeopardy tests set forth in *Wadle*

---

[2] I.C. § 35-41-5-3 provides that "(a) A person may not be convicted of both a conspiracy and an attempt with respect to the same underlying crime. (b) A person may not be convicted of both a crime and an attempt to commit the same crime." This statute immediately follows the attempt and conspiracy statutes.

must be applied here, and it must be concluded that her dual convictions for murder and conspiracy to commit murder in Count 2 cannot stand.

[23] Notwithstanding Littlefield's argument, we note that Indiana treats the offense of conspiracy to commit an offense as a separate crime from the underlying offense because the "agreement itself constitutes the criminal act." *Coleman v. State*, 952 N.E.2d 377, 382 (Ind. Ct. App. 2011). For instance, in *Garth,* the defendant was convicted of murder and conspiracy to commit murder. In rejecting Garth's argument on appeal that the dual convictions violated double jeopardy prohibitions, a panel of this court explained:

> [Ind. Code] Section 35-41-5-3 explicitly prohibits convictions for both a conspiracy and an *attempt* with respect to the same underlying crime. It also prohibits convictions for both a crime and an attempt to commit the same crime. *Id.* Notably, however, *it does not prohibit convictions for both a crime and a conspiracy to commit the same crime. If the legislature wanted to prohibit convictions for both a crime and a conspiracy to commit that same crime, it surely would have included such language in Section 35-41-5-3. See N.D.F. v. State*, 775 N.E.2d 1085, 1088 (Ind. 2002) ("[I]t is just as important to recognize what the statute does not say as it is to recognize what it does say."). *We conclude that the murder and conspiracy statutes allow for multiple punishments*, and consequently Garth's convictions do not violate double jeopardy.

182 N.E.3d at 920 (emphasis added).

[24] As in *Garth*, we conclude that there is no double jeopardy violation as to Littlefield's convictions for both murder and conspiracy to commit murder

under *Wadle.* Thus, our double jeopardy inquiry ends here, and Littlefield's convictions for both offenses may stand.

### 3. Sentencing

[25] Littlefield argues that the 115-year aggregate sentence was inappropriate when considering the nature of the offenses and her character in accordance with Ind. Appellate Rule 7(B). Although Littlefield acknowledges that her "repeated attempts to kill Kelley, the father of her young child, was particularly egregious," she claims that her enhanced, consecutive sentence must be revised because of her habitual drinking and her difficult childhood. *Appellant's Brief* at 20.

[26] Our standard of review regarding inappropriate sentence claims is well-settled:

> Indiana Appellate Rule 7(B) gives us the authority to revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Our review is deferential to the trial court's decision, and our goal is to determine whether the appellant's sentence is inappropriate, not whether some other sentence would be more appropriate. We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record.

*George v. State*, 141 N.E.3d 68, 73-74 (Ind. Ct. App. 2020), *trans. denied*.

[27] Whether a sentence is inappropriate turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Cardwell v. State*, 895 N.E.2d 1219,

1224 (Ind. 2008). The defendant has the burden of persuading us that the sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). More particularly, the defendant must show that her sentence is inappropriate with "compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[28] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). When a sentence deviates from the advisory sentence, "we consider whether there is anything more or less egregious about the offense as committed by the defendant that distinguishes it from the typical offense accounted for by our legislature when it set the advisory sentence." *Madden v. State*, 162 N.E.3d 549, 564 (Ind. Ct. App. 2021).

[29] Ind. Code § 35-50-2-3 sets forth a minimum sentence of forty-five years, a maximum of sixty-five years, and an advisory sentence of fifty-five years for the offense of murder. Here, the trial court sentenced Littlefield to sixty years for that offense. Under Count 2, Littlefield was convicted of conspiracy, a Level 1 felony, which provides for a minimum sentence of twenty years, a maximum sentence of forty years, and an advisory sentence of thirty years. The trial court imposed a thirty-five-year sentence on that offense. Littlefield's conviction for Count 3 conspiracy, a level 2 felony, carries a maximum sentence of thirty

years, a minimum of ten years, and an advisory sentence of seventeen-and-one-half years. Littlefield was sentenced to twenty years for that offense.

[30] When examining the nature of the offense, we look to the details and circumstances of the crime and the defendant's participation therein. *Madden*, 162 N.E.3d at 564. Notwithstanding Littlefield's attempt to minimize the egregiousness of her offenses because of her difficult childhood[3] and her alcohol abuse, she has offered no compelling evidence of "restraint, regard, and lack of brutality," in the commission of the offenses. *See Stephenson,* 29 N.E.3d at 122. The horrendous circumstances of the crimes, along with Littlefield's persistent pattern of trying to kill Kelley that ultimately deprived B.K. of a father, her continued manipulation of Runyon to participate in the murder plot, and the fact that she left her minor daughter in the car during the murder, do not warrant a revision of the sentence when examining the nature of the offenses.

[31] Turning to Littlefield's character, we note that "character is found in what we learn of the offender's life and conduct." *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). We conduct our review of a defendant's character by engaging

---

[3] The presentence investigation report (PSI) contradicts this assertion, in that Littlefield reported to the probation department that she was raised in a good home and had "no domestic issues" with her mother and stepfather. *Appellant's Appendix Vol. II* at 211. And even if there was evidence to support Littlefield's claim of a difficult childhood, our Supreme Court has "consistently held that [such circumstances] warrant little, if any, mitigating weight." *See Ritchie v. State*, 875 N.E.2d 706, 725 (Ind. 2007).

in a broad consideration of her qualities. *Madden*, 162 N.E.3d at 564. A defendant's life and conduct are illustrative of character. *Id.*

[32] Although Littlefield insists that she is of good character because she has no prior criminal convictions and was gainfully employed at the time of the offenses, the evidence demonstrates that she tried to enlist the aid of her two other daughters before successfully recruiting Runyon. Littlefield and Runyon illegally purchased fentanyl on several occasions to facilitate her commission of the murder, and Littlefield assisted Runyon in illegally entering Kelley's home. Indeed, a defendant's lack of criminal history may be properly rejected as a mitigating circumstance where there is other evidence of criminal behavior. *Bostick v. State,* 804 N.E.2d 218, 225 (Ind. Ct. App. 2004). Additionally, Littlefield's anger toward Kelley, her desire to exclude Kelley from B.K.'s life, and her threats against her own daughter to keep her involved in the murder plot, "speak[s] volumes" about Littlefield's poor character. *Appellee's Brief* at 31.

[33] In sum, neither the nature of the offenses nor Littlefield's character renders Littlefield's 115-year executed sentence inappropriate.

[34] Judgment affirmed.

Kenworthy, J., and Robb, Sr.J., concur.